BURFORD et al. v. ALDRIDGE et al., Appellants.    165    419
                                                   e176 ᵇ 17
In Banc, December 3, 1901.

1. **Will: SUIT BY HEIRS OF DEVISEE: NECESSARY PARTIES.** In a suit by the heirs of a devisee under the will to recover property misdirected by the life tenant, unless something appears to authorize the heirs and distributees of such devisee alone to sue, his administrator is a necessary party; and in such case the heirs should amend their petition either by making the administrator a party or by showing why they alone are entitled to sue in their own names.

2. ————: **PURCHASE BY LIFE TENANT OF REMAINDERMAN'S SHARE: INTEREST OF OTHER REMAINDERMEN.** A testator left his entire property, consisting of notes secured by a deed of trust, to his wife to be used and managed as she thought best, for her life, and whatever she left at her death was given to two brothers, a sister and a brother-in-law. After his death the widow, using money of the estate, bought the shares therein of his brothers and sister, and when the farm was foreclosed bought it in and took the title in her own name, giving the notes in payment, and at her death devised it to defendant upon condition that he pay her executors $5,000, which he tendered within proper time. Thereupon the heirs of the brother-in-law sued for the entire property remaining at the death of the widow, on the theory that on the assignment of the interests by the brothers and sister to the life tenant, the whole estate in remainder passed to their father or his heirs. *Held,*

*First,* this was not a devise to a class, nor did it create a joint estate or survivorship;

*Second,* under this will the interest of the widow was something more than a life estate, since she could have consumed its entire corpus, as well as the rents and profits, if she had so desired; and the other named devisees were something more than remaindermen, since if the widow kept the corpus intact and did not expend the rents, etc., their share was enlarged by the amount of unexpended rents;

*Third,* the plaintiffs are not entitled to any part of the money used to purchase the interests of the remaindermen, although the widow paid therefor with money belonging to the estate, but they

are entitled to one-fourth of the farm and of the rents which have arisen since her death, less one-fourth of the taxes, repairs and insurance.

Appeal from Pettis Circuit Court.—*Hon. George F. Longan,* Judge.

REVERSED AND REMANDED.

*Sangree & Lamm* and *Montgomery & Montgomery* for appellants.

(1) A trustee may purchase the trust property from the beneficiary if the trade be fair and beyond suspicion. Richard v. Pitts, 124 Mo. 602; State ex rel. v. Jones, 131 Mo. 194; Sallee v. Chandler, 26 Mo. 124; Allen v. Gillett, 127 U. S. 595. (2) These three residuary devisees had a right to sell. The estate became vested in them upon the death of Warren Wharton. There was no limitation over after their estate, but it vested in fee upon the death of Mrs. Wharton. No prohibition against alienation and no restraint upon the devisees which would prevent them severally from selling and disposing of the whole or a part thereof. Martin, Trustee, v. Davis, 82 Ind. 40; Perry on Trust (4 Ed.), sec. 827; Story, Eq. Juris., secs. 974, 1044, 1047; Bank v. Brown, 27 Conn. 600; Collier's Will, 40 Mo. 287; Chew v. Kellar, 100 Mo. 367; 2 Pomeroy, Eq. (2 Ed.), sec. 989; Putnam v. Story, 132 Mass. 205; Whipple v. Fairchild, 139 Mass. 264. (3) The respondents can not complain of this transaction. It in no manner affected their rights. Their share of the estate was not diminished one cent. They do not represent the three devisees who sold, and it is immaterial to them what disposition these devisees made of their interest in the estate. 1 White & Tudor, Leading Cases in Equity, pt. 1, p. 256, and authorities cited. (4) The deed was not a release or relinquishment to the plaintiffs of their share or even an acquittance for

their interest in the estate, but a full, complete and perfect transfer and conveyance to Mrs. Wharton. (5) In no event could the entire estate revert or pass to plaintiffs; neither they nor their ancestor are heirs of the testator. They take only under the will a one-fourth interest as residuary devisees. It was not their money which was used to pay the other three devisees. If it was not Mrs. Wharton's individual money, it belonged to the estate of the testator and the estate would, under plaintiffs' own theory, claim it from Mrs. Wharton's heirs. (6) The three-fourths interest purchased by Mrs. Wharton from the three residuary devisees passed under her will. She undertook to devise to defendant Aldridge the whole farm charged with the payment of $5,000. She had no title to one-fourth interest thereon. The plaintiffs are entitled to that one-fourth interest or to one-fourth the charge made on the whole farm by the will. They must elect and the devisee Aldridge receive the three-fourth interest charged with three-fourths of the $5,000 or the whole farm charged with the whole sum. Beach's Modern Eq., sec. 1068, et seq.; Story's Eq., secs. 1083, 1084, 1085, 1086, 1089; O'Reiley v. Nicholson, 45 Mo. 164; Graham v. Roseburgh, 47 Mo. 114; Havens v. Sackett, 15 N. Y. 369.

*G. W. Barnett* and *Chas. E. Yeater* for respondents.

(1) Under the will of Warren Wharton, Sarah Wharton took only a life estate in the property, both real and personal, with power to dispose of same as she might think proper for consumption in her life support, and what remained at the time of her death, unconsumed in supporting her, belongs to the remaindermen designated in the will. The widow, under this will, was by implication a quasi trustee for those in remainder and the interest of the residuary devisees was a vested right which could not be destroyed by the widow by disposing of the property by will, or otherwise than for her support or for the benefit of the estate. She was not seized of an estate

of inheritance, and, hence, had nothing remaining at her death which could pass by will. Johnson v. Johnson (Ohio), 38 N. E. 61; Munro v. Collins, 95 Mo. 33. The wife held the interest so purchased and taken in her own name as trustee for the benefit of the estate of her husband. There was a resulting trust in favor of the estate whose money had purchased these interests. Philips v. Overfield, 100 Mo. 466; Harney v. Donohue, 97 Mo. 141; Shaw v. Shaw, 86 Mo. 594; Hull v. Voorhies, 45 Mo. 555; Patterson v. Booth, 103 Mo. 402; Munro v. Collins, 95 Mo. 33; Sampson v. Bogley (R. I.), 44 L. R. A. 711; 10 Am. and Eng. Ency. Law (1 Ed.), p. 39, 40, 41, 42, 43, 44 and 45 and notes. (2) No matter what changed form the property takes, the trust will follow it. The mere change of the fund or trust property from one state or fund to another will not defeat the trust. Phillips v. Overfield, supra. (3) The trust, being once created, can not be abrogated or revoked without the consent of all parties in interest. Respondents in this case have never consented to an abandonment of the trust in their favor. Smith v. Smith, 70 Mo. App. 448; Ewing v. Shannaham, 118 Mo. 196; 1 Perry on Trusts (4 Ed.), sec. 104. (4) It is true, the residuary devisees had a right to sell their interest, and by their deed they have relinquished their interest in the estate. But as their interest was paid out of the funds of the estate, Mrs. Wharton held the interest thus acquired for the benefit of the estate—that is, for the benefit of the remainder-men who had not relinquished. The transaction in effect and in equity amounted to this, that the value of their interest was estimated, and paid to them in advance, leaving the balance of the estate for the remaining residuary legatee who had not relinquished, subject, of course, to the life estate.

## In Division One.

VALLIANT, J.—This is a suit in equity in which the plaintiffs, as heirs of one of the legatees under the will of

Warren Wharton, deceased, call the defendants, who claim under the will of Sarah Wharton, deceased, to account for what the plaintiffs claim to be trust property attempted to be misdirected by the last mentioned will.

The facts out of which the controversy arises are as follows:

Warren Wharton died in 1875, leaving a widow and no descendants, his heirs at law being two brothers, Emsley and John G. Wharton, and a sister, Eliza Plummer. He left an estate consisting only of personal property, chiefly notes, etc. At the date of his will he owned a farm of about 300 acres in Pettis county, but before his death he sold the farm, taking in part payment certain notes secured by a deed of trust, which notes he held at the time of his death, and they passed into the hands of his executors.

By his will he bequeathed a legacy of $1,000 to each of his brothers and sister, and besides some other minor provisions unnecessary to mention in this connection, there was this clause: *"Third,* I will, devise and bequeath to my beloved wife Sarah, all of my property, personal, real and mixed that may be left after paying the above bequests to use and manage as she may deem best, as long as she may live. And at her death I desire and so will, that what may be left of my estate after her death shall be divided equally between my two brothers, Emsley Wharton and John G. Wharton and my sister, Eliza Plummer and my brother-in-law, D. W. Burford." There was no further disposal of the estate in the nature of a residuary clause. Since the death of the testator the last-named legatee has died and the plaintiffs in this suit are his children and heirs.

After the final settlement of the estate of Warren Wharton in the probate court, the widow being in possession, under the will, of the notes belonging to the estate, upon default in payment of those securing the purchase money of the farm, the deed of trust was foreclosed, and the widow became the

purchaser at the trustee's sale taking the deed thereto in her own name, and giving in payment thereof the notes secured by the deed of trust. After that purchase the widow lived on the farm the rest of her life. In September, 1881, while the widow was in possession of the estate under the will, she had a transaction with the two brothers and sister of the testator whereby, for the present cash payment to them of $3,000, they assigned and conveyed to her their interests in the remainder of the estate that the will gave them after her death. This was in addition to the special legacies of $1,000 each previously given in the will; so that they received in all $6,000. Of this sum the legacies of $1,000 each was paid out of assets of the estate and there was evidence tending to show that the other $3,000 paid for the remainder interest also came out of the estate and the chancellor so found.

In 1893 the widow, Sarah Wharton, died, leaving a will in which, among other provisions unnecessary to mention in this connection, she devised the farm to defendant Aldridge upon condition that he pay her executors $5,000 therefor within a time specified, and within that time Aldridge tendered the amount to her executors, and by his answer in this suit stands ready to comply with those terms. This will deals with the property as if it belonged absolutely to the testatrix and ignores the legacy in remainder to D. W. Burford.

The decree of the circuit court was that at the death of the widow all her interest in the property ceased, that nothing passed under her will and that the plaintiffs were entitled to the whole estate real and personal. From that decree the defendants appeal.

It does not appear from the abstract when D. W. Burford, the father of plaintiffs, died, but we infer from the general discussion that it was after the death of the testator and before the death of the widow, and that being the case and nothing in reference to the estate of D. W. Burford appearing to authorize his heirs and distributees alone to sue, his administra-

tor is a necessary party to this proceeding, and before the plaintiffs can have a decree they should amend their petition either by making the administrator a party or by showing why the heirs and distributees are entitled to sue in their own names.

We can not approve the main legal proposition on which the plaintiffs base their case and on which the decree was founded, that is, that upon the assignment of their interests by three of the four legatees or devisees, who for want of a more accurate name we will call remaindermen, the whole estate in remainder passed to the fourth. The trial court found, as a fact, that the widow paid for those three interests with money belonging to the estate, and whilst, as the case is to be retried, we will not express any opinion on that question of fact but for the present will assume that that finding was correct, still it does not justify the plaintiffs' full claim.

The clause in the will of Warren Wharton, under which the plaintiffs claim, does not convey the remainder of the estate to a class of which their father is one, nor is there any joint estate or survivorship indicated. The provision is "that what may be left of my estate after her death shall be divided equally between my two brothers, Emsley Wharton and John G. Wharton, my sister Eliza Plummer, and my brother-in-law, D. W. Burford." There was a separate share to each, which, if either had died after the death of the testator, would have passed to his or her personal representative, just as the plaintiffs now claim the share of their father upon his death passed to them.

The interest that the widow took under the will was peculiar. It was a life estate yet in one sense it was something more than is ordinarily embraced in that term, and in another sense perhaps not as much. Ordinarily a life estate entitles the tenant to the rents of the land and use of the personalty or interest if it be money. But under this will the widow was entitled to consume as much of the estate as she desired, the

body as well as the product. And on the other hand, if she had lived within the rents and interest and left a surplus of that, there is at least room for contention that such surplus would not have gone to her administrator on her death but to the remaindermen under the will. Therefore, whilst she was in a sense a trustee of the property for the use of the remaindermen, yet she had a very substantial interest in it and the remaindermen could not call her to account or restrict her in amount in what she chose to spend for her own gratification, even though it consumed the whole estate, as long as good faith was preserved. Under those conditions, therefore, although the relation of trustee and beneficiary existed, the law did not forbid her buying from them their contingent interests. [Sallee v. Chandler, 26 Mo. 124; Richards v. Pitts, 124 Mo. 602; State ex rel. v. Jones, 131 Mo. 194.] The law does require of a trustee to exercise good faith and even care commensurate with the circumstances to protect the interests of the beneficiaries, but when that appears to have been done, the transaction will be upheld. In any event, however, it is only at the suit of the beneficiary complaining of being imposed upon that the law will look into the transaction. In the case at bar, if any parties were injured they were the three remaindermen who sold and it is no concern of the plaintiffs.

If we should adopt the plaintiffs' theory and say that as this was a transaction between a trustee on the one hand and the beneficiaries on the other, out of which the trustee can gain nothing, therefore it is set aside, the result would be that all the property held by the life tenant at the time of her death would pass under the will in equal parts to the four remaindermen, but before dividing it the law would require the three who had already received advancements on their shares to bring back what they had received with interest and then take share and share alike.

The plaintiffs say it was paid for with money of the estate and therefore the interests purchased belonged to the estate.

Conceding for the argument that it is so, the four remainder-men were not the only persons interested in the estate; the life tenant also had an interest in the three thousand dollars paid. She had the right to use it as long as she lived and spend the principal, if she saw fit, in her own living; surrendering to these three remaindermen the present interest she had in the $3,000 was, as between her and them, a sufficient consideration to support the contract. And as it appears that she lived sixteen years after her purchase, it would seem to have been a very judicious business transaction on the part of the three who realized so early. The plaintiffs' father, however, had no interest in the transaction; the interests of the three who had sold were not his interest. His interest was independent of theirs, and their conduct without him could neither impair nor improve his estate. At the death of the life tenant the plaintiffs' father, if living, would have been entitled by force of the will to one-fourth of what would have been left of the estate if the act complained of had not occurred; that much his personal representatives are now entitled to, neither more nor less. But they say that by the act complained of the body of the estate was then impaired to the extent of $3,000. If that $3,000 had belonged to the plaintiffs they would have been entitled to the proceeds or the property which it purchased. But as they had only a contingent interest in one-fourth of it, how then can they claim the whole result of the investment? The utmost the plaintiffs can ask is that the estate be restored to the condition in which it would have been if the transaction complained of had not taken place. Since the plaintiffs would have been entitled, as against the other three remaindermen, to have the $3,000 and interest brought back into the estate for an equal division if the transaction as between the life tenant and the three remaindermen who sold should be held to have passed no title, so likewise they are entitled to have it brought back when that transaction is held valid and the division is to be had between the plain-

tiffs and those claiming under the will of the purchaser. By that means the plaintiffs get all that the will of Warren Wharton gave them and that is all they show title to. In one aspect that requirement may seem unfair to the defendants, because it gives to the plaintiffs the full principal and interest undiminished by consideration of the contingency that the widow might have spent the whole of it in her lifetime. But the answer to that is, the plaintiffs were not consulted in that transaction and the defendants are in the shoes of their testatrix who is responsible for the situation.

Under the pleadings and the facts as found by the trial court, if D. W. Burford were now living he would be entitled to one-fourth of the real estate in question and one-fourth of the rents thereof that have arisen since the death of Mrs. Wharton, less his share of the taxes, cost of necessary repairs and insurance, if any, and also one-fourth of all the personal property of the estate of Warren Wharton, deceased, on hand at the date of the widow's death, plus one-fourth of $3,000 and interest thereon at six per cent from September 1, 1881, to the date of the widow's death, and that is all that either his heirs or administrators are now entitled to. Upon payment by James Aldridge to the executors of the will of Sarah Wharton deceased of three-fourths of $5,000 he is entitled to three-fourths of the farm. And when it comes to a partition of the farm between Aldridge and the heirs of Burford, if it should be found that Aldridge has made permanent valuable improvements on the farm before he had notice of the claim of the plaintiffs, the part allotted to him should contain those improvements without diminution of his share if it can be done without impairment of the value of the share to be allotted to the plaintiffs, otherwise the partition should be made without distinction in his favor on account of such improvements. And in the event a sale of the farm should be found necessary for partition, Aldridge would be entitled, in addition to three-fourths of the net proceeds, to the amount, if any, the court

may find that the price realized was enhanced by such improvements so made, but unless the court finds that the price was so enhanced and the amount thereof, such improvements will not be considered.

The judgment is reversed and the cause remanded to the circuit court to be proceeded with according to the law as above expressed. *Brace, P. J.,* concurs; *Robinson* and *Marshall, JJ.,* concur in the result, but are of the opinion that the plaintiffs are not entitled to any part of the $3,000 paid by Mrs. Wharton, even if it should be found to have been paid out of money coming to her from the estate, in the purchase by her of the interests of the other three remaindermen. Therefore, the cause is transferred to the Court in Banc.

## In Banc.

PER CURIAM.—Upon a consideration of this cause by the court In Banc, the foregoing opinion by *Valliant, J.,* in Division One, is adopted as the opinion of the court, and concurred in by all the judges except that as to the item of $3,000 paid by Mrs. Wharton to purchase the interests of three of the remaindermen, a majority of the court, *Burgess, C. J.,* and *Sherwood, Robinson* and *Marshall, JJ.,* hold that the plaintiffs are not entitled to any part of it. Therefore, in making division of what was left of the estate of Warren Wharton, deceased, at the death of his widow, the trial court will proceed as directed in the foregoing opinion except that no account will be taken of that three thousand dollars. *Brace, Gantt* and *Valliant, JJ.,* concur in the original opinion.